## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MELISSA L. STURGEON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 15-CV-52-PJC** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

Claimant, Melissa L. Sturgeon ("Sturgeon"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be taken directly to the Tenth Circuit Court of Appeals. Sturgeon appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Sturgeon was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

**Claimant's Background**

At the time of the hearing before the ALJ on October 23, 2014, Sturgeon was 47 years old.  (R. 35, 185).  She graduated from high school and had some vocational training.  (R. 41).  She had a handicapped placard for her car approved by a physician, and she did not drive often. (R. 40-41).

Sturgeon last worked as a casino slot attendant, and she testified that she had to quit in 2011 or 2012.  (R. 41).  She said that she quit after one month due to pain from standing and walking for an entire shift.  (R. 41-42).

Sturgeon said that her hip problems were related to a cancer diagnosis she received in 1992 that was treated with various therapies, including steroids.  (R. 42-43).  She said that the steroids caused avascular necrosis in both hips.  *Id.*  She had hip replacement surgeries in 1995, but she continued to have problems with pain and with the possibility of dislocation.  (R. 43).  In the 2008 time period, Sturgeon's pain would be aggravated by walking too much or sitting too long in one position.  (R. 48).  She thought that she could sit for two hours both in the 2008 time period and the time period at the date of the hearing, but she would have reached her limit with two hours, and she wouldn't be able to sit for another two hour period after a rest.  (R. 49).

Sturgeon testified that she had a second pair of hip replacement surgeries in 2014.  (R. 43).  Sturgeon described some problems in healing from the 2014 surgeries.  (R. 45-46).  She said that she was in a lot of pain and that the doctors were not sure how much of the pain would eventually go away as she healed.  *Id.*  Sturgeon said that before the 2014 surgeries, her pain had been the "entire hip muscles," and after the surgeries, the pain was "in two or three areas."  (R. 48).

2

Sturgeon testified that her surgeon had told her that after the 2014 hip replacement surgeries she was at high risk of dislocation.  (R. 43-44).  Sturgeon said that she could not bend over, and she had to be careful about sitting or moving her hips past a certain angle.  (R. 58-59).  When asked if she could put on her socks, Sturgeon explained that she could not, so she had a special tool that allowed her to do it.  (R. 58-59).  She could not pick up items from the floor, so she had a "grabber" to pick things up.  *Id.*  She said that she took hydrocodone for pain.  (R. 44).  She said that her physician advised her to use a walker, a crutch, or a cane to assist her when she left the house.  *Id.*  Sturgeon said that she had a limp and that it was painful to walk.  *Id.*

Sturgeon testified that she could only stand for about 15 minutes both at the time of the hearing and during the 2008 time period.  (R. 49-50).  Sturgeon said that walking was more painful than sitting or standing and that she did not walk far.  (R. 50).  She could walk less than one block.  *Id.*

Sturgeon testified that she only started taking prescription pain medications in 2009, and before that time period, she had been drinking alcohol to help alleviate the pain.  (R. 51).  She said that she drank vodka daily from about 2008 until about one year before the hearing.  (R. 51-52).

Sturgeon said that at the time of the hearing, she would lie down once a day for about an hour to help with the pain.  (R. 52).  During the 2008 time period, she would lie down once or twice a day for three to four hours.  (R. 52-53).

Sturgeon testified that, in addition to her physical problems from her hips, she had depression and problems with memory and concentration.  (R. 46).  She also suffered from severe headaches from 2008 until the time of the hearing.  (R. 53).  The headaches were so severe that her vision was affected and she could not do anything productive.  *Id.*  The headaches

would last nine to ten hours, or until Sturgeon took enough medication.  *Id.*  The frequency of the headaches was higher in the 2008 to 2009 time period, because she was not taking medication. (R. 53-54).  Even with medication, Sturgeon continued to have headaches about four times a month.  (R. 54).

Sturgeon also had problems with her breathing from the 2008 time period to the time of the hearing.  *Id.*  She had shortness of breath, and she was more susceptible to respiratory illness, including pneumonia.  *Id.*  Sturgeon admitted that she smoked about a half a pack of cigarettes a day, which she said was down from one to two packs a day.  (R. 55).  Any kind of exertion would make Sturgeon short of breath, and she had difficulty walking up more than three or four steps at a time.  (R. 54-57).

Records from the McAlester Regional Health Center (the "McAlester Center") reflect that Sturgeon was seen in the emergency room on June 22, 2005 for rib pain after a fall.  (R. 332-39).

Imaging of Sturgeon's brain completed on January 10, 2006, showed surgical changes with no evidence of residual or recurrent tumor.  (R. 292-93).

Records from the McAlester Center reflect that Sturgeon was seen in the emergency room on May 9, 2006 for muscle spasms and dislocation of her right hip.  (R. 326-31, 340-67).

A transfer summary from Carl Albert Community Mental Health Center (the "Mental Health Clinic") dated November 7, 2007, reflects that Sturgeon was inpatient from November 1, 2007 to November 7, 2007.  (R. 379-92).  Sturgeon stated that she thought she was having a nervous breakdown.  (R. 379).  Sturgeon's final Axis I[1] diagnosis was depressive disorder, not

---

[1] The multiaxial assessment system "facilitates comprehensive and systematic evaluation."  *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27 (Text Revision 4th ed. 2000) (hereinafter referred to as DSM-IV).

otherwise specified, and her Global Assessment of Functioning ("GAF")[2] was stated as 50.  (R. 381).  She was prescribed Prozac.  (R. 383).

A discharge summary from the Mental Health Clinic dated February 15, 2008 stated that Sturgeon had been inpatient for six days in November 2007 and then had been transferred to outpatient services.  (R. 294-97).  The discharge summary said that Sturgeon had not kept an appointment on November 28, 2007, and had not contacted the staff at the facility since that time.  (R. 294).  Sturgeon's Axis I diagnosis was stated as depressive disorder, not otherwise specified, and her GAF was stated as 55.  (R. 295).

Records show that Sturgeon obtained medications, including Prozac, from the McAlester Center from September 2012 through December 2013.  (R. 409-17).

Sturgeon was seen at the McAlester Center on August 10, 2013, for dislocation of her left hip.  (R. 299-325).

Sturgeon was seen for a screening and intake at the Mental Health Clinic on September 6, 2013.  (R. 372-78).  She complained of anxiety, daily anxiety attacks, suicidal thoughts, and feelings of worthlessness.  (R. 372).

---

[2] The GAF score represents Axis V of the multiaxial assessment system.  *See* DSM-IV at 32-36.  A GAF score is a subjective determination which represents the "clinician's judgment of the individual's overall level of functioning."  *Id.* at 32.  The GAF scale is from 1-100.  A GAF score between 21-30 indicates "behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment . . . or inability to function in almost all areas."  *Id.* at 34.  A score between 31-40 indicates "some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  *Id.*  A GAF score of 41-50 reflects "serious symptoms . . . or any serious impairment in social, occupational, or school functioning," and 51-60 reflects moderate symptoms or moderate difficulty in functioning.  *Id.*  Scores between 61-70 reflect "some mild symptoms" or "some difficulty" in functioning, but "generally functioning pretty well."  *Id.*  A score between 71 and 80 reflects symptoms that are transient and reactions to stressors with no more than slight impairment in functioning.  *Id. See also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012).

Records from the OU Medical Center in Oklahoma City show that Sturgeon was treated from March 2014 through August 2014 for failure of her earlier total hip replacement surgeries and that revision surgeries were done.  (R. 424-81, 484-85).  Discharge instructions after revision of her left hip in April 2014 stated that Sturgeon was "to observe the strict posterior hip precautions, but to be weightbearing as tolerated."  (R. 428).  On July 3, 2014, Sturgeon said that the pain from her right hip replacement was debilitating.  (R. 455).  On examination, Sturgeon's right side had "positive resisted straight leg raise and pain in her groin with flexion and internal rotation."  *Id.*  After revision surgery of her right hip in August 2014, Sturgeon was given several restrictions in her movement of her hip.  (R. 458).  She was directed to use a walker, and she was told not to drive.  *Id.*

Agency examining consultant Kathie Ward, Ph.D., assessed Sturgeon on November 18, 2013.  (R. 394-98).  Dr. Ward's assessments were severe alcohol use disorder; unspecified depressive disorder; and panic disorder.  (R. 397).

Agency examining consultant William R. Grubb, M.D., examined Sturgeon on November 27, 2013.  (R. 400-06).  On examination, Dr. Grubb said that Sturgeon declined some of the range of motion testing of her left hip.  (R. 401).  Sturgeon's gait was normal in terms of speed, stability and safety, and Dr. Grubb estimated that she could walk more than three or four blocks.  (R. 402).  In his impressions, Dr. Grubb noted Sturgeon's history of hip replacements, recurrent left hip location, history of previous infection in her right leg, history of right ankle injury, and history of cancer.  *Id.*  Dr. Grubb also noted Sturgeon's complaints of depression, insomnia, and anxiety on medication.  *Id.*

6

## Procedural History

Sturgeon filed her applications for disability insurance benefits and supplemental security income with a protective filing date of August 27, 2013.  (R. 180-90).  Sturgeon stated that she had become unable to work on January 1, 2008.  (R. 180).  The applications were denied initially and upon reconsideration .  (R. 120-31, 136-38).  An administrative hearing was held before ALJ James Bentley on October 23, 2014.  (R. 35-69).  By decision dated November 3, 2014, the ALJ found that Sturgeon was not disabled.  (R. 18-33).  On December 16, 2014, the Appeals Council denied review.  (R. 1-5).  Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal.  20 C.F.R. §§ 404.981, 416.1481.

## Social Security Law and Standard Of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 404.1520.[3]  *See also Wall v. Astrue*, 561 F.3d 1048, 1052-53 (10th Cir. 2009)

---

[3] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four,

(detailing steps).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d at 1084 (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  *Wall*, 561 F.3d at 1052 (quotations and citations omitted).  Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Id.*

### Decision of the Administrative Law Judge

The ALJ found that Sturgeon met insured status requirements through March 31, 2009. (R. 20).  At Step One, the ALJ found that Sturgeon had not engaged in any substantial gainful activity since the alleged onset date of January 1, 2008.  *Id.*  At Step Two, the ALJ found that Sturgeon had severe impairments of bilateral avascular necrosis requiring bilateral hip

---

where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

replacement; history of astrocytoma; and obesity.  *Id.*  At Step Three, the ALJ found that Sturgeon's impairments did not meet any Listing.  (R. 25-26).

The ALJ found that Sturgeon had the RFC to do sedentary work with a sit/stand option and environmental and postural limitations.  (R. 26).  At Step Four, the ALJ determined that Sturgeon was unable to perform past relevant work.  (R. 31).  At Step Five, the ALJ found that there were a significant number of jobs in the national economy that Sturgeon could perform, taking into account her age, education, work experience, and RFC.  (R. 31-32).  Therefore, the ALJ found that Sturgeon was not disabled at any time from January 1, 2008 through the date of the decision.  (R. 32).

## Review

Sturgeon states one error on appeal:

> The [RFC Assessment] adopted by the ALJ [] is not well-supported by the "narrative discussion" provided in the decision.  While the ALJ did make "function-by-function" RFC findings, and while he did summarize and discuss the evidence of record, the decision lacks the clearly expressed evidentiary rationale required by Social Security Ruling 96-8p explaining ***how*** specific evidence of record corresponds to and supports the specific functional findings adopted by the ALJ.

Plaintiff's Amended Social Security Brief, Dkt. #22, p. 4.  As discussed below, Sturgeon's argument was not sufficiently developed to allow for meaningful review, and any issues she attempted to raise are therefore waived.  Moreover, even in the absence of a finding of waiver, Sturgeon's arguments are not persuasive.  The ALJ's decision is supported by substantial evidence and complies with legal requirements.  Thus, the ALJ's decision is **AFFIRMED**.

A Social Security claimant must adequately develop arguments before a district court. *Wall*, 561 F.3d at 1066.  In *Wall*, the court discussed an argument related to the claimant's RFC. *Id.*  The Tenth Circuit noted that at the district court level, the claimant had merely alleged,

several times, that the ALJ had failed to consider the objective medical evidence. *Id.* The appellate court cited to the opinion of the district court, stating that "[b]ecause Claimant's counsel failed to present any developed argumentation in regard to Claimant's physical impairments, the district court obviously viewed this issue as waived." *Id.* The Tenth Circuit called the claimant's argument at the district court "perfunctory," and said that it had deprived that court of the opportunity to analyze and rule on that issue. *Id. See also Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011) (Tenth Circuit's review is limited to issues the claimant preserved at the district court level and adequately presented on appeal); *Tietjen v. Colvin*, 527 Fed. Appx. 705, 709 (10th Cir. 2013) (unpublished) (affirming lower court's finding of waiver when argument was one "unspecific, undeveloped, and unsupported single sentence"); *Sullivan v. Colvin*, 519 Fed. Appx. 985, 987 (10th Cir. 2013) (unpublished) (affirming lower court's finding of waiver on credibility issue).

Sturgeon's one point of error in her appeal is not specific enough to allow for meaningful review.  She says that the ALJ's decision does not explain how he arrived at his RFC assessment. The ALJ's decision, however, is 16 pages in length and recounts the evidence and the ALJ's analysis in detail.  (R. 18-33).  The ALJ's decision easily passes the review standard of being supported by substantial evidence, and Sturgeon's one complaint, that the ALJ did not explain his RFC assessment in enough detail, is without merit.  The lack of substance to Sturgeon's argument is emphasized by the fact that her brief cited to only three cases in total, and the first two were cited only for a general standard of review.  The third case cited by Sturgeon was *Cruse v. United States Dept. Of Health and Human Services*, 49 F.3d 614, 618 (10th Cir. 1995). Sturgeon says that *Cruse* stands for the proposition that the ALJ discussed evidence, but did not relate it to his conclusions.  *Cruse* does, indeed, contain that language, but the larger point for the

Tenth Circuit was that the ALJ's decision was not supported by substantial evidence: "More importantly, we have serious doubts whether there is substantial evidence to support his conclusion." *Id.*  Thus, Sturgeon's only cited case is not similar to the present case.  "A party's failure to cite any authority 'suggests either that there is no authority to sustain its position or that it expects the court to do its research.'"  *Flores v. Astrue*, 246 Fed. Appx. 540, 543 (10th Cir. 2007) (unpublished), *quoting Rapid Transit Lines, Inc. v. Wichita Developers, Inc.*, 435 F.2d 850, 852 (10th Cir. 1970).  Sturgeon's argument is too general to allow for meaningful review. *Wall*, 561 F.3d at 1066; *Tietjen v*, 527 Fed. Appx. at 709; *Sullivan*, 519 Fed. Appx. at 987.

Even if the Court were to find that Sturgeon's arguments were specific enough to allow for review, her arguments, to the extent they are discernable, are not persuasive.  Sturgeon opened her brief with a discussion of the scope of judicial review and a paragraph stating that her case was decided at Step Five, which meant that the burden had shifted to the Commissioner. Plaintiff's Amended Social Security Brief, Dkt. #22, p. 5.  At Step Five, the burden shifts to the Commissioner to show that there are jobs in significant numbers that the claimant can perform taking into account her age, education, work experience and RFC.  *Haddock v. Apfel*, 196 F.3d 1084, 1088-89 (10th Cir. 1999).  Sturgeon's general discussion of the standard of review and the import of Step Five did not raise any issues that need to be addressed by this Court.

Sturgeon's next paragraph states again that the ALJ's RFC was not well-supported by the required narrative discussion.  Plaintiff's Amended Social Security Brief, Dkt. #22, p. 6. Sturgeon then concedes that the ALJ provided a function-by-function RFC assessment.  *Id.* Sturgeon agrees that the ALJ discussed the medical evidence, daily activities, and third party statements, but she then states that there was no "clearly expressed rationale connecting the RFC

findings adopted by the ALJ to corresponding evidence of record." *Id.* The undersigned

disagrees and finds that the ALJ's reasoning connecting the evidence to his RFC was sufficient.

The ALJ's decision was very thorough. (R. 18-33). After his Step Two finding, the ALJ

discussed the treating physical medical evidence contained in the administrative transcript in

some detail in chronological order. (R. 20-22). The ALJ then discussed Sturgeon's obesity. (R.

22). The ALJ then went on to discuss the treating medical evidence of Sturgeon's mental

impairments, which he found to be nonsevere. (R. 22-25). The ALJ then found that none of

Sturgeon's impairments met or equaled a Listing at Step Three. (R. 25-26).

The ALJ then recited his RFC assessment, followed by a discussion of the legal

requirements his decision needed to address, including the required assessment of Sturgeon's

pain. (R. 26-27). The ALJ then summarized Sturgeon's assertions of disability in her

administrative paperwork and in her testimony at the hearing. (R. 27). The ALJ then explained

that he found Sturgeon's impairments could reasonably be expected to cause some of the alleged

symptoms, but he found that Sturgeon's statements were not completely credible. *Id.* He then

summarized the report of Dr. Grubb, the agency medical examining consultant. (R. 27-28). The

ALJ then addressed Sturgeon's credibility in great detail, giving multiple detailed reasons why he

found her claims of total disability to be less than fully credible. (R. 28-31). Within this

discussion, the ALJ also discussed third party statements by a Social Security clerk and by

Sturgeon's mother. (R. 29). He then addressed the agency physical medical consultant opinions.

*Id.* He explained that the agency consultants' opinions were that Sturgeon could perform work at

the full range of "light" exertional activities. *Id.* He explained that he gave these opinions great

weight, but he modified the RFC to sedentary work with additional limitations "based upon the

subjective complaints of the claimant." *Id.*

The ALJ then addressed the mental consultant opinion evidence, and he explained that one opinion was inconsistent and that he was giving the other opinion, that Sturgeon had no severe mental impairments, great weight.  *Id.*  The ALJ then addressed Sturgeon's obesity again, and he explained his function-by-function analysis of Sturgeon's limitations.  (R. 30).  The ALJ's decision then contained several paragraphs of general discussion, and he concluded with a paragraph explaining that he found Sturgeon's allegations not fully believable.  (R. 30-31).  He found that Sturgeon's impairments did not preclude the performance of sedentary work with the additional limitations included in his RFC finding.  (R. 31).

When the comprehensive and detailed nature of the ALJ's decision is described, it is difficult to explain how Sturgeon can then argue that "there is no clearly expressed rationale connecting the RFC findings adopted by the ALJ to corresponding evidence of record." Plaintiff's Amended Social Security Brief, Dkt. #22, p. 6.  In her brief, Sturgeon then herself summarizes the format of the ALJ's decision, conceding that the decision "admittedly reveals that many useful things are discussed and covered."  *Id.*, pp. 6-7.  She then says that the ALJ did not explain how the evidence supported the specific functional limitations included in the RFC, but that the ALJ only gave general characterizations and unexplained conclusions.  *Id.*, p. 7.

The undersigned disagrees.  The ALJ's RFC was supported by substantial evidence.  One source of the substantial evidence was the opinion evidence of the agency nonexamining consultants, which the ALJ acknowledged specifically.  (R. 29, 70-80, 83-117).  The agency consultants, as the ALJ specifically stated, found that Sturgeon could perform the entire range of light work.  *Id.*  The ALJ said that he was affording those opinions great weight, but that he was modifying them to sedentary work with additional limitations "based upon the subjective complaints of the claimant."  (R. 29).  This is not a general characterization or an unexplained

13

conclusion.  This is a specific reference to substantial evidence that supported the ALJ's RFC

assessment.  *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (nonexamining

consultant's opinion was an acceptable medical source which the ALJ was entitled to consider

and which supported his RFC determination); *Franklin v. Astrue*, 450 Fed. Appx. 782, 790 (10th

Cir. 2011) (unpublished) (RFC assessment of agency nonexamining physician was substantial

evidence supporting ALJ's conclusion); *Barrett v. Astrue*, 340 Fed. Appx. 481, 485 (10th Cir.

2009) (unpublished) (ALJ was entitled to rely upon opinion of nonexamining psychiatrist).  The

nonexamining consultant opinions continue to be substantial evidence supporting the ALJ's RFC

even though the ALJ included limitations more restrictive than those given in the opinions of the

agency consultants.  *Chapo v. Astrue*, 682 F.3d 1285, 1287-88 (10th Cir. 2012) (no error by ALJ

in relying on opinion of examining consultant and tempering the opinion in favor of claimant).

In her brief, Sturgeon then addresses the opinion evidence, although again her discussion

is free of specific issues or citations to any authority.  Plaintiff's Amended Social Security Brief,

Dkt. #22, p. 8.  *See Flores*, 246 Fed. Appx. at 543 (party's failure to cite any authority suggests

either that there is no authority to sustain its position or that it expects the court to do its

research).  Sturgeon says, without any citation to authority, that nonexamining opinions are "not

favored in law."  *Id.*  Actually, the correct statement of the law is that nonexamining consultant

opinions are from acceptable medical sources and can constitute substantial evidence supporting

an ALJ's RFC.  *Flaherty*, 515 F.3d at 1071; *Franklin*, 450 Fed. Appx. at 790; *Barrett*, 340 Fed.

Appx. at 485.  The context when nonexamining opinions are not favored is when there are

opinions from treating or examining sources.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th

Cir. 2004) (Regarding opinion evidence, generally the opinion of a treating physician is given

more weight than that of an examining consultant, and the opinion of a nonexamining consultant

is given the least weight).  Here, the opinion evidence of the nonexamining consultants is the only opinion evidence in the record, and Sturgeon does not assert that there is any other opinion evidence.  Therefore, with no other opinion evidence, the nonexamining consultants' opinions are substantial evidence supporting the ALJ's RFC assessment.  *Flaherty*, 515 F.3d at 1071; *Franklin*, 450 Fed. Appx. at 790; *Barrett*, 340 Fed. Appx. at 485.

Sturgeon makes one weak attempt to argue that the ALJ did not explain why he accepted one of the mental nonexamining opinions over another, but again she did not cite to any authority.  Plaintiff's Amended Social Security Brief, Dkt. #22, p. 8.  *Flores*, 246 Fed. Appx. at 543 (party's failure to cite any authority suggests either that there is no authority to sustain its position or that it expects the court to do its research).  Sturgeon's argument regarding the nonexamining mental consultants is not sufficiently developed to allow for meaningful review.  *Wall*, 561 F.3d at 1066; *Smith v. Colvin*, 625 Fed. Appx. 896, 901 (10th Cir. 2015) (unpublished) (conclusory assertion that did not identify any specific error waived alleged error relating to ALJ's analysis); *Tietjen v*, 527 Fed. Appx. at 709; *Sullivan*, 519 Fed. Appx. at 987.

Even in the absence of a finding of waiver due to her lack of development of her argument relating to the consulting mental opinions, Sturgeon's argument fails on the merits as well.  The ALJ explained that the second consulting mental opinion had an internal inconsistency, which is a legitimate reason for discounting or rejecting a medical opinion.  *Pisciotta v. Astrue*, 500 F.3d 1074, 1077-78 (10th Cir. 2007); *Lankford v. Colvin*, 612 Fed. Appx. 496, 498 (10th Cir. 2015) (unpublished).  Thus, Sturgeon's complaint that the ALJ did not explain why he rejected one of the consulting mental opinions is incorrect.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and complies with legal requirements.  The decision is **AFFIRMED**.

Dated this 29th day of March 2016.

Paul J. Cleary
United States Magistrate Judge